# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI-DAM, | Case No. 1:20-cv-00408-SKO |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | (Doc. 23) |
| SCOTT FRAZIER, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Tri-Dam ("Plaintiff") filed this action against Defendant Scott Frazier ("Defendant"), alleging causes of action for violation of the Federal Power Act ("FPA"), 16 U.S.C. § 825p, public nuisance, private nuisance, trespass, and interference with express easement. (Doc. 1 ("Compl.").) On May 21, 2021, Defendant filed a motion to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). (Doc. 23.) Plaintiff filed its opposition on June 9, 2021, and Defendant filed his reply on June 16, 2021. (Docs. 28 & 29.) After reviewing the parties' papers, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court vacated the hearing set for June 23, 2021. (Doc. 30.) On July 14, 2021, the Court directed the parties to file supplemental briefing, which was completed on July 30, 2021. (Docs. 33–36.)

1

For the reasons set forth below, Defendant's motion to dismiss is denied.[1]

## II.     FACTUAL BACKGROUND[2]

Plaintiff, a joint venture between the South San Joaquin Irrigation District and Oakdale Irrigation District, owns and operates the Tulloch Hydroelectric Project No. 2067 (the "Project") located in Tuolumne and Calaveras Counties, California, pursuant to a license (the "License") issued by the Federal Energy Regulatory Commission ("FERC"). (Compl. at ¶¶ 3, 4, 9). The Tulloch Project boundary extends approximately 1,619 acres and includes all the land within the 515-foot elevation contour surrounding the Tulloch Reservoir. (*Id.* at ¶ 5). Sixty-one percent of the land within the Project boundary is privately owned, twenty-six percent of the land is owned by Plaintiff, and twelve percent of the land is owned by either the state of California or the federal government. (*Id.*) Defendant owns land in Calaveras County, at 7540 O'Byrnes Ferry Road, Copperopolis, California, and Plaintiff possesses flowage easements for the operation of the Tulloch Reservoir that encumber Defendant's property. (*Id.* at ¶¶ 6, 8.)

The FPA commands FERC to assure that projects are developed to serve various public needs, and FERC places on licensees (*e.g.*, Plaintiff) the responsibility to assure that project uses are consistent with federal law and policy. (Compl. at ¶ 10.) Plaintiff asserts that it is obligated under Articles 13, 411, and 413 of the License and section 10(a) of the FPA to regulate non-project use and occupancy of lands and waters within the Project boundary to assure that such use is best adapted to a comprehensive plan for development of the Stanislaus River for a variety of beneficial public uses. (*Id.* at ¶¶ 13, 16 (internal quotation marks omitted).) Article 411 of the License requires Plaintiff to develop a shoreline management plan, which Plaintiff most recently revised in April 2015 and was approved by FERC in September 2016 (the "Shoreline Management Plan"). (*Id.* at ¶¶ 11, 12, 13.)

Article 39 of the License provides Plaintiff with the authority to grant permission for use of

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. (Docs. 9, 10.)

[2] Where, as here, a party brings a facial attack to subject matter jurisdiction such that the party contends the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the Court is required to accept as true all factual allegations in the complaint. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003). Accordingly, the factual background section is derived from the factual allegations of the complaint (unless otherwise noted) and will be used to resolve this motion only.

lands within the Project boundary without prior approval of FERC, and Article 413 of the License and the Shoreline Management Plan allow Plaintiff to grant permission, without prior FERC approval, for the use and occupancy of Project lands for minor activities such as construction of sea walls and installation of boat docks. (Compl. at ¶¶ 9, 17.) Article 413 also requires Plaintiff to establish a program for issuing permits and provides that if a permitted use and occupancy violates any condition of the Shoreline Management Plan or any other condition imposed by Plaintiff, then Plaintiff "shall take any lawful action necessary to correct the violation," including "requiring the removal of any non-complying structures and facilities." (*Id.* at ¶¶ 18, 19 (quoting the License).) Plaintiff has "the continuing responsibility to supervise and control the use and occupancies for which it grants permission, and to monitor the use of, and ensure compliance with the covenants of the instrument of conveyance for, any interests that it has conveyed under [Article 413]." (*Id.* at ¶ 18 (quoting the License).)

FERC regulations require that Plaintiff approve all facilities within the Project boundary through Plaintiff's permitting program prior to installation. (Compl. at ¶ 21.) To obtain approval from Plaintiff, all facilities must be in conformance with the Shoreline Management Plan. (*Id.* at ¶¶ 21, 23.) For example, a party desiring to construct or rebuild a private, single-family facility— defined to include docks—within the Project boundary must obtain authorization from Plaintiff prior to the initiation of excavation or construction. (*Id.* at 24.)

The Calaveras County Municipal Code ("Calaveras Code") also regulates facilities surrounding the Tulloch Reservoir, requiring that all facilities installed, constructed, or maintained within the Reservoir and Project boundary be in full compliance with appropriate permitting regulations of Calaveras County and Plaintiff. (Compl. at ¶ 25.) The Calaveras Code further provides that no facility shall be installed, constructed, or maintained within the Project boundary unless a permit has been issued by the county and an encroachment permit has been issued by Plaintiff; any use of property contrary to the provisions of the Calaveras Code is unlawful and constitutes a public nuisance. (*Id.*)

Plaintiff has documented the existence of a slip dock, several personal water craft ("PWC") ports, and a waterslide extending from Defendant's property into the Project boundary. (Compl. at

¶ 26.) Defendant did not obtain permits from Plaintiff prior to installing these facilities. (*Id.*) In May 2019, Plaintiff was informed that Defendant had moved and installed two additional docks and connected them to the existing slip dock. (*Id.*)

Defendant initially attempted to disclaim responsibility for the slip dock, PWC ports, and waterslide, asserting that they were not being used. (Compl. at ¶ 27.) After Plaintiff presented evidence to the contrary, Defendant obtained a permit to move one of the two docks off the slip dock to another location on the Tulloch Reservoir. (*Id.*) The dock, however, has not been moved and remains connected to the slip dock on Defendant's property. (*Id.*) Plaintiff informed Defendant that the unpermitted facilities did not comply with the Shoreline Management Plan and demanded that Defendant remove them, but Defendant refused. (*Id.* at ¶ 32.) Plaintiff has received numerous complaints from other landowners "citing the decreased navigability and concern for public safety and protection of property rights for others." (*Id.* at ¶ 31.)

As the unpermitted facilities are located within the Project boundary, and Defendant did not obtain permits from Plaintiff prior to installing the facilities, Plaintiff alleges that Defendant violated the FPA, FERC regulations, and the Shoreline Management Plan. (Compl. at ¶¶ 29, 33–42.) Plaintiff also alleges claims for public nuisance, private nuisance, trespass, and interference with express easement based on Defendant's conduct. (*Id.* at ¶¶ 43–75.) Plaintiff requests injunctive relief, damages, and costs and fees. (*Id.* at ¶¶ A–J.)

### III.   LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Because "[f]ederal courts are courts of limited jurisdiction[,]" "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If no subject matter jurisdiction exists, then the Court must dismiss the complaint. Fed. R. Civ. P. 12(h)(3).

Challenges to jurisdiction may be either facial or factual in nature. *San Luis & Delta-*

*Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012). A facial attack to jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A factual attack, on the other hand, "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* In a factual challenge, the court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## IV.   DISCUSSION

Plaintiff's complaint alleges that this Court has subject matter jurisdiction over the action pursuant to three statutes: (1) 28 U.S.C. § 1331, under which jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States"; (2) 28 U.S.C. § 1337, under which jurisdiction exists for "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies"; and (3) 16 U.S.C. § 825p ("Section 825p"), under which district courts have exclusive jurisdiction over actions "brought to enforce any liability or duty created by, or to enjoin any violation of" the FPA or any rule, regulation, or order thereunder. (Compl. at ¶ 1.) Defendant raises a facial challenge to the Court's subject matter jurisdiction, contending that this case does not arise under any of the statutes referenced by the complaint. (*See* Doc. 23.)

### A.   Federal Question Jurisdiction Exists Pursuant to 28 U.S.C. §§ 1331 and 1337

Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United Sates." 28 U.S.C. § 1331 ("Section 1331"). The well-pleaded complaint rule provides that federal question jurisdiction under Section 1331 exists only when "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28 (1974) (quotation and citation omitted). The "vast majority" of cases arising under federal law "are those in which federal law creates the cause of action." *Merrell Dow Pharm.*

*Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Cases may also arise under federal law when "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 808 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

Federal district courts also have original jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337 ("Section 1337"). The FPA constitutes an act of Congress regulating commerce, as "[u]nder the [FPA], [FERC] has authority to regulate 'the transmission of electric energy in interstate commerce' and 'the sale of electric energy at wholesale in interstate commerce.'" *F.E.R.C. v. Elec. Power Supply Ass'n*, 577 U.S. 260, 265 (2016), *as revised* (Jan. 28, 2016). "[T]he 'arising under' language in [Section] 1337 is interpreted in essentially the same way as the 'arising under' phrase in [Section] 1331." *Garrett v. Time-D.C., Inc.*, 502 F.2d 627, 629 (9th Cir. 1974).

For the reasons explained below, the Court finds that the FPA does not create a cause of action, but Plaintiff's public nuisance claim necessarily turns on some construction of federal law. Therefore, subject-matter jurisdiction exists pursuant to Sections 1331 and 1337.

**1. Federal Law Does Not Create a Cause of Action**

Plaintiff's complaint alleges a violation of the FPA, FERC regulations, and the SMP. (Compl. at ¶¶ 33–42.) The complaint, however, does not specifically identify which provision of the FPA or which FERC regulation Defendant has allegedly violated. (*See* Compl. at ¶¶ 33–42.) The complaint essentially alleges that Defendant's failure to obtain permits for his various facilities, as required by the Shoreline Management Plan, is a violation of the FPA and FERC regulations. (*See id.* at ¶¶ 36–43.) Plaintiff reasons that this is so because Plaintiff has an affirmative duty under its License from FERC—whose authority derives from the FPA—to regulate the use and occupancy of water and land within the Project boundary, and the Shoreline Management Plan, which is required by and approved by FERC, is an extension of authority from the FPA. (*Id.* at ¶¶ 12–13, 16, 18, 30.) Given this duty, Plaintiff contends that its suit against Defendant for his violations of the Shoreline Management Plan constitutes an "action at law brought to enforce any . . . duty created by, or to enjoin any violation of" the FPA and FERC regulations" under Section 825p. (*See* Compl.

at ¶¶ 13, 16, 18; Doc. 28 at 9).

Section 825p provides, in part:

> The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of [the FPA] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA] or any rule, regulation, or order thereunder.

16 U.S.C. § 825p. This section, however, is an exclusive jurisdiction provision and does not provide an independent cause of action. *See Pan Am. Petroleum Corp. v. Super. Ct. of Del.*, 366 U.S. 656, 664 (1961) ("Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction"); *cf. Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 591 (6th Cir. 2013) ("Section 717u [an exclusive jurisdiction provision under the Natural Gas Act] . . . does not create an action."). *See also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016) (holding that an exclusive jurisdiction provision under the Securities Exchange Act "provides exclusive federal jurisdiction of the same class of cases as 'arise under' the Exchange Act for purposes of [28 U.S.C.] § 1331."). Indeed, in its supplemental briefing, Plaintiff acknowledges that Section 825p cannot provide an independent basis for subject matter jurisdiction, stating "the jurisdictional grant is coextensive with 'arising under' jurisdiction" under 28 U.S.C. § 1331. (Doc. 34 at 3.)

Furthermore, "[n]umerous courts, under varying sets of facts, have held that the FPA does not create a general, private cause of action." *Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cty. Washington*, 447 F. Supp. 3d 1030, 1043–44 (E.D. Wash. 2020), *aff'd sub nom. Cytline, LLC v. Pub. Util. Dist. No. 2 of Grant Cty., Washington*, 849 F. App'x 656 (9th Cir. 2021) (citing *City of Gainesville v. Fla. Power & Light Co.*, 488 F. Supp. 1258, 1275 (S.D. Fla. 1980) ("[T]his Court concludes that there exists no private right of action of the nature sought by the plaintiffs under the Federal Power Act."); *Coalition for Competitive Electricity, Dynegy Inc., v. Zibelman*, 272 F. Supp. 3d 554, 565 (S.D.N.Y. 2017) (explaining that the omission of a general private cause of action in the FPA should be construed as intentional); *Village of Old Mill Creek v. Star*, No. 17 CV 1163 and No. 17 CV 1164, 2017 WL 3008289, at *8 (N.D. Ill. July 14, 2017) (finding that 16

U.S.C. § 824d, located in Part II of the FPA, requires "just and reasonable" rates, but that FERC must enforce those rates)); *see also Carrington v. City of Tacoma, Dep't of Pub. Utilities, Light Div.*, 276 F. Supp. 3d 1035, 1043 (W.D. Wash. 2017) ("It is well-established that § 10(c) [of the FPA] does not create a private right of action.") (citing *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 519 (9th Cir. 2005)).

In an argument raised for the first time in its supplemental briefing, Plaintiff contends that "FERC has interpreted the FPA as providing licensees with enforcement authority, up to and including initiating lawsuits in federal court for injunctive relief," and this "interpretation" is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 865–66 (1984). (Doc. 34 at 6–7 (citing *In re Entergy Corporation*, 80 FERC ¶ 61266 (1997).) Even assuming that FERC has interpreted the FPA in the manner asserted by Plaintiff, this contention is unavailing. "Only the Constitution and Congress can confer subject matter jurisdiction on a federal court." *Tesfay v. Holder*, 942 F. Supp. 2d 1063, 1066 (D. Nev. 2013) (citing *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang,* 376 F.3d 831, 837 (9th Cir. 2004); *Lanza v. Ashcroft*, 389 F.3d 917, 930 (9th Cir. 2004) (explaining that federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and [Congress]") (quotation omitted)). "[T]o establish federal jurisdiction in the absence of constitutional authority, a party must rely on a federal statute." *Id.* (citing *Hoang*, 376 F.3d at 837). Here, Plaintiff has not alleged any claims arising under the Constitution, and as discussed above, the FPA does not create a private right of action. Accordingly, federal law does not provide a cause of action under which Plaintiff can sue Defendant for his failure to obtain permits in accordance with the Shoreline Management Plan.

### 2. Plaintiff's Public Nuisance Claim Necessarily Raises a Substantial and Disputed Issue of Federal Law

Under a narrow exception to the well-pleaded-complaint rule, "federal jurisdiction over a state-law claim will lie if a federal issue is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting

*Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "All four requirements must be met for federal jurisdiction to be proper." *Id.* at 904–05. Plaintiff asserts that the Court has subject matter jurisdiction over the state law claim for public nuisance under the four-factor test described above. (Doc. 34 at 9–10.) The Court agrees.

First, under Ninth Circuit authority, a federal issue is necessarily raised if it is "basic," "necessary," "pivotal," "direct," or "essential" to the claim. *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1045–46 (9th Cir. 2003). In *Carrington v. City of Tacoma, Dep't of Pub. Utilities, Light Div.*, 276 F. Supp. 3d 1035 (W.D. Wash. 2017), the District Court for the Western District of Washington considered whether subject-matter jurisdiction existed over the plaintiffs' state law negligence claim against a FERC licensee. *Id.* at 1040–41. The court determined that the "negligence claim necessarily raises a federal question because [the defendant's] FERC license established the applicable duty of care." *Id.* at 1041. Because it was "necessary to interpret [the defendant's] FERC license to determine the duty of care, [the plaintiffs'] claims implicate[d] a substantial issue of federal law." *Id.* at 1042.[3]

Here, the Calaveras Code provides:

> All facilities installed, constructed or maintained within the . . . FERC project boundary shall be in full compliance with appropriate permitting regulations of the county and [Plaintiff]. [¶] No facility shall be installed, constructed or maintained within the FERC project boundary unless . . . an encroachment permit has been issued by [Plaintiff]. [¶] . . . [¶] Any dock, building or structure set up, erected, built, moved or maintained or any use of property contrary to the provisions of this chapter is unlawful and constitutes a public nuisance.

Calaveras County, Cal., Mun. Code § 20.10.120. Plaintiff has alleged that Defendant's unpermitted facilities violate the Calaveras Code, as all facilities within the Project boundary must be approved by Plaintiff through its permitting program, and to obtain a permit, the facilities must be in conformance with the Shoreline Management Plan. (Compl. at ¶ 21.) As in *Carrington*, Plaintiff's public nuisance claim necessarily raises a federal question because the Court must interpret the Shoreline Management Plan, which is a part of Plaintiff's FERC license, *see Kelly v. Pub. Util. Dist. No. 2*, No. CV–11–023–JLQ, 2011 WL 2294166, at *6 (E.D. Wash. June 8, 2011) ("The Shoreline Management Plan is one part of [the FERC] license"), to determine whether Defendant's facilities

---

[3] Neither party cited to *Carrington* in any of their briefing, but the Court finds the reasoning in that case persuasive.

9

are in compliance with the requisite permitting regulations. *Cf. Carrington*, 276 F. Supp. 3d at 1041 (finding that state law negligence claim necessarily raised a federal question because the dam operator's FERC license established the duty of care).

Second, the federal issue of Defendant's compliance with the Shoreline Management Plan is "actually disputed" by the parties. In his answer to the complaint, Defendant "denies any facilities are 'Unpermitted Facilities'" and "denies the facilities do not comply with the Shoreline Management Plan." (Doc. 6 at 8.)

Third, as to whether the federal issue in this case is substantial, the inquiry focuses on the importance of the issue "to the federal system as a whole." *City of Oakland*, 969 F.3d at 905 (quoting *Gunn*, 568 U.S. at 260). "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit[.]" *Gunn*, 568 U.S. at 260. As the *Carrington* court recognized:

> The federal government has an "obvious concern in maintaining control over [the] engineering, economic, and financial soundness" of FERC-licensed dam operations. *First Iowa. Hydro–Elec. Co-op v. Federal Power Commission*, 328 U.S. 152, 172 (1946). The FPA is designed as "a complete scheme of national regulation which would promote the comprehensive development of the water resources of the Nation . . . instead of a piecemeal, restrictive, negative approach of . . . other federal laws previously enacted." *Id.* at 180.
>
> . . . . The FPA provides a comprehensive regulatory structure and prescribes an arduous licensing procedure to establish guidelines for dam operations. [The dam operator's] thirty-six year FERC relicensing process, involving numerous federal agencies, Northwest Indian Tribes, and other stakeholders, evidences the substantiality of this regime. [The state law] claim necessarily requires analysis of the federal standard borne out of this process. The federal issues in this case are substantial.

*Carrington*, 276 F. Supp. 3d at 1042 (finding that state law negligence claim against a FERC licensee implicated a substantial issue of federal law). The Court finds that the same reasoning applies here. Resolution of the issue and case directly impacts not only Plaintiff's alleged duty under its License to protect and enhance the scenic, recreational, and environmental values of the Project (*see* Compl. at ¶¶ 13, 16, 17), but also FERC's obligation under the FPA to assure that projects are developed to serve various public needs, *see* 16 U.S.C. § 803(a)(1).

Lastly, the fourth requirement—which "is concerned with the appropriate 'balance of federal and state judicial responsibilities'"—is also met. *Gunn*, 568 U.S. at 264 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005)). Again, the Court finds the

1  Western District of Washington's reasoning in *Carrington* compelling:

> The FPA provides no evidence that Congress intended these issues to be litigated in state courts.  Conversely, the fact that the FPA's judicial review provisions both vest the federal courts with 'exclusive jurisdiction' evidences Congress' intent to resolve such disputes in a federal forum.  *See* 16 U.S.C. §§ 825l(b), 825p.  Since the FPA anticipates federal jurisdiction, and cases regarding similar state law claims have likewise been removed to federal court, exercising jurisdiction is unlikely to significantly shift state law claims away from state courts.

*Carrington*, 276 F. Supp. 3d at 1042.  Exercising jurisdiction in this case will not disrupt the congressionally-approved, state-and-federal balance under the FPA.  Indeed, this Court been adjudicating claims nearly identical to those in the instant case for at least the past decade.  *See, e.g.*, *Tri-Dam v. Schediwy*, No. 1:11–CV–01141–AWI–SMS (filed June 8, 2011); *Tri-Dam v. Yick*, No. 1:11–CV–01301–AWI–SMS (filed Aug. 5, 2011); *Tri-Dam v. Keller*, No. 1:11–CV–01304–AWI–SAB (filed Aug. 5, 2011); *Tri-Dam v. Michael*, No. 1:11–CV–2138–AWI–SMS (filed Dec. 27, 2011); *Tri-Dam v. Holman*, No. 1:13–cv–01448–AWI–SMS (filed Sept. 9, 2013); *Tri-Dam v. Arco*, No. 1:19–cv–01505–DAD–BAM (filed Oct. 23, 2019).

Defendant urges the Court to adopt the reasoning of the Fourth Circuit Court of Appeals in *Pressl v. Appalachian Power Company*, 842 F.3d 299 (4th Cir. 2016), and find that no subject-matter jurisdiction exists over Plaintiff's public nuisance claim. (Doc. 23 at 810.)  In *Pressl*, private homeowners sought to construct a dock on their property, which was encumbered by a flowage easement owned by Appalachian Power Company ("APCO"), a FERC licensee.  *Pressl*, 842 F.3d at 301–02.  After APCO informed the homeowners that they would have to comply with APCO's restrictions and execute an Occupancy and Use Permit to construct the dock, the homeowners filed suit in state court, seeking a declaratory judgment that APCO's demands violated the terms of the easement.  *Id.* at 301–02.  APCO removed the case, asserting that federal jurisdiction existed because the property on which the homeowners wanted to build the dock was situated "within the project boundary for APCO's hydroelectric project, which APCO operate[d] under a license issued by [FERC]."  *Id.* at 302.  The district court agreed and denied the homeowners' motion to remand.  *Id.*  On appeal, the Fourth Circuit held that no subject-matter jurisdiction existed because interpretation of the scope of the flowage easement did not necessarily raise a question of federal law.  *Id.* at 303.  The Fourth Circuit held that a state-law claim necessarily raises a federal issue "only when *every*

11

legal theory supporting the claim requires the resolution of a federal issue." *Id.* at 304 (emphasis in original) (citation and quotation omitted). The homeowners' claims did not necessarily raise a federal issue because the claims at least partially turned on interpretation of the language conveying the easement under state law. *Id.* at 304–05.

*Pressl* is distinguishable from the case at bar. As the Fourth Circuit observed, the parties' dispute over the easement in *Pressl* did not necessarily raise a federal issue because state law dictated how the easement was to be interpreted, and the court was not required to look beyond the plain language of the easement to determine its scope—in other words, the court "did not need to analyze the meaning of APCO's license to determine the reasonable limits of the easement." *Pressl*, 842 F.3d at 305. Here, however, interpretation of the Shoreline Management Plan, which has been approved by FERC and is a part of the License (*see* Compl. at ¶ 12), is essential to Plaintiff's public nuisance claim. The Calaveras County Municipal Code provides that failure to comply with Plaintiff's permitting regulations, *i.e.*, the Shoreline Management Plan, constitutes a public nuisance *per se*. Calaveras County, Cal., Mun. Code § 20.10.120. Accordingly, as resolution of the public nuisance claim necessarily turns on interpretation of the Shoreline Management Plan, a federal instrument, this Court has jurisdiction over the claim. *See Carrington*, 276 F. Supp. 3d at 1041; *Kelly*, 2011 WL 2294166, at *6.

In sum, because Plaintiff's state law public nuisance claim necessarily raises a substantial federal question, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 over this matter.

## V.   CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction (Doc. 23) is DENIED. **Within fourteen (14) days of this order**, Defendant's deposition shall be taken in person, and Plaintiff shall serve its responses to Defendant's Interrogatories, Requests for Admission, and Requests for Production.

///

///

///

Furthermore, the Scheduling Order (Doc. 13) is MODIFIED as follows[4]:

| Event | New Date |
|---|---|
| Non-Dispositive Motion Filing | September 17, 2021 |
| Non-Dispositive Motion Hearing | October 13, 2021 |
| Dispositive Motion Filing | October 20, 2021 |
| Dispositive Motion Hearing | December 1, 2021 |
| Pre-Trial Conference | January 26, 2022 at 2:30 p.m. |
| Trial | April 12, 2022 at 8:30 a.m. |

IT IS SO ORDERED.

Dated:   **August 27, 2021**                          /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[4] Should the parties believe that another settlement conference would be productive at this juncture, they may file a joint report proposing three to four dates for a settlement conference.

13