1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI-DAM, | Case No.  1:20-cv-00408-SKO |
| Plaintiff, | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | (Docs. 38, 45) |
| SCOTT FRAZIER, | |
| Defendant. | |
| _____/ | |

## I.      INTRODUCTION

Plaintiff Tri-Dam ("Plaintiff") filed this action against Defendant Scott Frazier ("Defendant"), alleging causes of action for violation of the Federal Power Act ("FPA"), 16 U.S.C. § 825p, public nuisance, private nuisance, trespass, and interference with express easement.  (Doc. 1 ("Compl.").)  On October 20, 2021, Plaintiff filed a motion for partial summary judgment on its public and private nuisance claims, and Defendant filed a motion for summary judgment or, alternatively, partial summary judgment or judgment on the pleadings, on all of Plaintiff's claims. (Docs. 38, 45.)  The parties filed their respective oppositions on November 17, 2021, and their respective replies on November 24, 2021.  (Docs. 46, 50, 51, 52.)  After reviewing the parties' papers, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court vacated the hearing set for December 1, 2021.  (Doc. 53.)

For the reasons set forth below, Plaintiff's motion for partial summary judgment will be granted in part and denied in part, and Defendant's motion for summary judgment or, alternatively, partial summary judgment or judgment on the pleadings, will be granted in part and denied in part.[1]

## II.    FACTUAL BACKGROUND

Plaintiff, a joint venture between the South San Joaquin Irrigation District and Oakdale Irrigation District, owns and operates the Tulloch Hydroelectric Project No. 2067 (the "Project") located near Tuolumne and Calaveras Counties, California, pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC").  (Doc. 44, Declaration of Jarom Zimmerman ("Zimmerman Decl.") at ¶¶ 3–4; Doc. 44-1, Resolution re: Joint Cooperation on Proposed Storage Projects on Stanislaus River ("Resolution"); Doc. 44-2, Order Issuing New License ("FERC License"); Doc. 50-8, Plaintiff's Statement of Disputed Facts ("PSDF") 1.).  The boundary of the Project extends approximately 1,638 acres and includes all the land within the 515-foot elevation contour surrounding the Tulloch Reservoir (the "Project Boundary").  (FERC License at 3.)  The high water mark of the Tulloch Reservoir (the "Reservoir") is 510 feet.  (*Id.*; Doc. 44-3, Tulloch Reservoir Shoreline Management Plan, May 2015 ("SMP") at 4-3.)  Sixty-one percent of the land within the Project Boundary is privately owned, twenty-six percent of the land is owned by Plaintiff, and twelve percent is owned by either the State of California or the federal government.  (FERC License at 3.)

Plaintiff's initial license from FERC permitted it to begin operating the Project on January 1, 1955, for a term ending December 31, 2004.[2]  (FERC License at 1; SMP at 1-1.)  That license provided Plaintiff with authority to grant permission for use of lands within the Project Boundary.  (Zimmerman Decl. at ¶ 9.)  In 2002, Plaintiff developed a shoreline management plan ("SMP") in anticipation of obtaining a new license for the Project.  (Zimmerman Decl. at ¶ 6.)  Between 2004 and 2006, while Plaintiff's application for a new license was pending, Plaintiff operated the Project under an annual license.  (*Id.* at ¶ 9.)  In 2006, FERC issued a new license to Plaintiff for a term of

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (Docs. 9, 10.)

[2] The license was initially issued on August 28, 1951, but the effective date of the license was subsequently changed to January 1, 1955.  *See Oakdale Irrigation Dist. & S. San Joaquin Irrigation Dist.*, 14 F.P.C. 567 (1955).

39 years and 11 months.  (*Id.* at ¶ 7; FERC License at 16.)  Article 413 of the FERC license provides Plaintiff the authority to approve of certain types of use and occupancy of Project lands and waters, such as boat docks, without having to first seek FERC approval.  (FERC License at 29.)  That year, FERC also ratified the 2002 SMP, which described the minor shoreline development projects subject to Plaintiff's approval authority under Article 413 and set forth the permitting process. (PSDF 7; Zimmerman Decl. at ¶ 6; FERC License at 29.)  In 2015, at FERC's request, Plaintiff filed a revised SMP, which was approved on September 8, 2016, and has been in effect since that time. (PSDF 10; Zimmerman Decl. at ¶ 8; *see* SMP.)

Plaintiff's FERC license requires it to obtain control of all lands necessary for operation and maintenance of the Project.  (FERC License at 34–35.)  In 1957, Plaintiff obtained a flowage easement to property owned by Joe Sanguinetti within the Project Boundary (the "Flowage Easement").  (Doc. 42, Request for Judicial Notice in Support of Motion for Partial Summary Judgment ("RJN"), Exhibit A.)  The Flowage Easement applied to nine parcels of land owned by Sanguinetti and was set forth in the recorded conveyance of the Flowage Easement in a description of metes and bounds.  (*Id.*)  One of the rights granted by the Flowage Easement was "to enter upon said land from time to time and clear, destroy, or dispose of any timber or other natural growth, and any obstructions, accumulations, trash, filth and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof."  (*Id.*; PSDF 3.)

On September 16, 2008, the Calaveras County Board of Supervisors (the "Board") passed Ordinance Number 2957, adding Sections 20.10.100 to 20.10.200 (the "Ordinance") to the Calaveras County Municipal Code.  (RJN, Exhibit C; *see also* Calaveras County, Cal., Mun. Code §§ 20.10.100 *et seq.*)  The Ordinance provides:

> A. All facilities installed, constructed or maintained within the reservoir and FERC project boundary shall be in full compliance with appropriate permitting regulations of the county and Tri-Dam.
>
> B. No facility shall be installed, constructed or maintained within the FERC project boundary unless a permit has been issued by the county and an encroachment permit has been issue by the Tri-Dam Project.
>
> C. The county and Tri-Dam Project shall work in concert to ensure the safe and

efficient operation of Tulloch Reservoir.

D. Any dock, building or structure set up, erected, built, moved or maintained or any use of property contrary to the provisions of this chapter is unlawful and constitutes a public nuisance . . . . All docks and facilities installed within the FERC project boundary shall be concurrently reviewed and permitted by the county and the Tri-Dam Project prior to installation.  The county shall not issue a permit without prior approval from the Tri-Dam Project.  Any dock or other facility installed prior to 1979 shall be considered "grandfathered" into legal existence.   Any expansion, reconstruction or other alteration shall be subject to full compliance with current regulations.

Calaveras County, Cal., Mun. Code § 20.10.120.

Defendant owns the property located at 7540 O'Byrnes Ferry Road, Copperopolis, California (the "Property").  (Doc. 45-2, Defendant's Statement of Undisputed Facts ("DSUF") 1; Doc. 45-1, Declaration of Scott Frazier ("Frazier Decl.") at ¶ 2.)  In 2011, Defendant purchased Spica Holdings LLC, the company that owned the Property at the time, and  subsequently transferred the Property to his name in 2019.  (DSUF at 1; Frazier Decl. at ¶ 2.)  There is a dock, three personal watercraft ports, and a waterslide (the "Contested Facilities"), all of which are unpermitted, on the Property.  (Doc. 43, Plaintiff's Statement of Undisputed Facts ("PSUF") 6, 7, 8; DSUF 2; Frazier Decl. at ¶ 2.)

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this

responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id.* By contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, then the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**B.      Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The "same standard of review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion."

*Howell v. Leprino Foods Co.*, No. 18-01404, 2020 WL 704778, at *1 (E.D. Cal. Feb. 12, 2020) (citing to *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  The court draws reasonable inferences in the non-moving party's favor and accepts the complaint's allegations as true.  *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019).  "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."  *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

## IV.    DISCUSSION

### A.    Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of: (1) the recorded conveyance of a flowage easement from Joe Sanguinetti to Oakdale Irrigation District and South San Joaquin Irrigation District, recorded by the Calaveras County Recorder on November 18, 1957, in Book 114 of Official Records (RJN, Exhibit A); (2) the grant deed regarding the property located at 7540 O'Byrnes Ferry Road, Copperopolis, California, 95228, reflecting the grant of the property to Defendant Scott Frazier, recorded in Calaveras County on November 26, 2018 (RJN, Exhibit B); (3) Chapter 20.10 of the Calaveras County Municipal Code (RJN, Exhibit C; Doc. 50-6, Request for Judicial Notice in Support of Opposition to Defendant's Motion for Summary Judgment or Partial Summary Judgment, Exhibit A); and (4) the records, pleadings, factual findings, and other documents already filed in the instant case (Docs. 1–45), as well as the cases of *Tri-Dam v. Schediwy*, No. 1:11–CV–01141–AWI–MJS, 2014 WL 897337 (E.D. Cal.); and *Tri-Dam v. Yick*, No. 1:11–cv–01301–AWI–SMS, 2016 WL 4061348 (E.D. Cal.).  (Docs. 42, 50-6.) Defendant did not file any objections to Plaintiff's request.  (*See* Docket.)

Plaintiff's request for judicial notice is GRANTED, to the extent that facts within the records are undisputed.[3]  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that a court

---

[3] Although the Court may take judicial notice of its own docket, it is unnecessary for a party to make such a request for judicial notice.  *See Chaffey Joint Union High Sch. Dist. v. FieldTurf USA, Inc.*, No. No. EDCV 16–204 JGB (DTBx), 2017 WL 3048658, at *2 n.2 (C.D. Cal. Feb. 28, 2017) ("The Court may of course take judicial notice of filings and pleadings on its own docket . . . . But such requests are unnecessary; [the defendants] may cite directly to the docket to reference such orders."); *John Brown Univ. v. Charisma in Missions, Inc.*, No. 15–cv–08890 AB (AGRx), 2016 WL 7448113, at *2 n.2 (C.D. Cal. 2016) ("[J]udicial notice of pleadings in the same litigation is unnecessary[.]").

may take notice of matters of public record); *Cousyn for Cousyn Grading and Demo Inc. v. Ford Motor Company*, No. ED CV 17–2051–DOC (KKx), 2019 WL 3491930, at *4 (C.D. Cal. July 30, 2019) ("[E]ven when the court judicially notices the existence of a reliable source, it may not notice disputed facts contained within the source."); *see also Darling Int'l, Inc. v. Baywood Partners, Inc.*, No. C-05-3758 EMC, 2005 WL 8162725, at *5 (N.D. Cal. Dec. 21, 2005) (taking judicial notice of grant deeds, leases, and easement agreements recorded in the official records of Sonoma County); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice."); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases[.]").

### B.      Evidence Before the Court

In evaluating a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings, deposition testimony, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). "Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial." *AtPac, Inc. v. Aptitude Sols., Inc.*, 787 F. Supp. 2d 1108, 1110 (E.D. Cal. 2011). "This court has always interpreted Rule 56(c)(2) to require that an objection to a proffer of evidence on the ground of inadmissibility must be based on the impossibility of producing the evidence in a form that would be admissible *at trial.*" *Honnevk v. Farmers New World Live Ins. Co.*, No. 1:11–CV–1531–AWI–DLB, 2013 WL 3733610, at *5 (E.D. Cal. July 15, 2013).

Defendant has filed numerous evidentiary objections to evidence submitted by Plaintiff in support of its motion for partial summary judgment. (Doc. 49.) Specifically, Defendant asserts objections based on lack of foundation, improper expert opinion, hearsay, and authenticity. (*See*

Doc. 49.)  The Court has reviewed each of Defendant's objections and finds that Defendant has not demonstrated that Plaintiff would be unable to produce the objected-to-evidence in a form that would be admissible at trial.  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("When evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial*, a court may still consider that evidence.") (emphasis in original); *see also City of Lincoln v. United States*, No. 2:16–CV–1164–KJM–AC, 2020 WL 5107613, at *5 n.3 (E.D. Cal. Aug. 31, 2020) (overruling objections based on lack of foundation for purposes of summary judgment motion); *Russell v. Walmart Inc.*, No. CV 19–5495–MWF (JCX), 2020 WL 5289889, at *4 (C.D. Cal. Aug. 17, 2020) (overruling "garden variety evidentiary objections" based on foundation, authenticity, and hearsay grounds).[4]  Therefore, Defendant's objections to Plaintiff's evidence are OVERRULED.

## C.   First Cause of Action for Violation of the Federal Power Act, FERC Regulations, and the Shoreline Management Plan

Defendant moves for partial summary judgment, or, alternatively, judgment on the pleadings, on Plaintiff's first cause of action for violation of the FPA, FERC regulations, and the SMP based on failure to state a cause of action.  (Doc. 45 at 8–9.)  In the order denying Defendant's motion to dismiss, this Court determined that the FPA does not provide a cause of action under which Plaintiff can sue Defendant for his failure to obtain permits in accordance with the SMP.  (*See* Doc. 37 at 6–8.)  As explained in that order (*see id.*), "[n]umerous courts, under varying sets of facts, have held that the FPA does not create a general, private cause of action."  *Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cnty. Washington*, 447 F. Supp. 3d 1030, 1043–44 (E.D. Wash. 2020), *aff'd sub nom. Cytline, LLC v. Pub. Util. Dist. No. 2 of Grant Cnty., Washington*, 849 F. App'x 656 (9th Cir. 2021) (citing *City of Gainesville v. Fla. Power & Light Co.*, 488 F. Supp.

---

[4] For example, Defendant objects, on the basis of lack of foundation and improper expert opinion, to the following statement in Zimmerman's declaration: "I am informed and believe that Tulloch Reservoir is a navigable waterway of the United States."  (Doc. 49 at 2.)  As Plaintiff points out (Doc. 52-1 at 3–4), that Tulloch Reservoir is a navigable waterway of the United States is a fact that can readily be determined from sources whose accuracy cannot be questioned, *see* 10 FPC 1278, 1280 (1951) ("The [Federal Power] Commission finds: (1) The proposed Tulloch project would affect the navigable capacity of the San Joaquin River and the interests of interstate or foreign commerce therein. (2) A considerable portion of the lands affected by the proposed project are public lands of the United States."), and thus judicially noticeable.  *See* Fed. R. Evid. 201 (allowing judicial notice of facts that are generally known within the court's territorial jurisdiction or can be readily determined from sources whose accuracy cannot reasonably be questioned).

1258, 1275 (S.D. Fla. 1980) ("[T]his Court concludes that there exists no private right of action of the nature sought by the plaintiffs under the Federal Power Act."); *Coalition for Competitive Electricity, Dynegy Inc., v. Zibelman*, 272 F. Supp. 3d 554, 565 (S.D.N.Y. 2017) (explaining that the omission of a general private cause of action in the FPA should be construed as intentional); *Village of Old Mill Creek v. Star*, Nos. 17–CV–1163 and 17–CV–1164, 2017 WL 3008289, at *8 (N.D. Ill. July 14, 2017) (finding that 16 U.S.C. § 824d, located in Part II of the FPA, requires "just and reasonable" rates, but that FERC must enforce those rates); *see also Carrington v. City of Tacoma, Dep't of Pub. Utilities, Light Div.*, 276 F. Supp. 3d 1035, 1043 (W.D. Wash. 2017) ("It is well-established that § 10(c) [of the FPA] does not create a private right of action.") (citing *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 519 (9th Cir. 2005)).   Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's first cause of action for violations of the FPA, FERC regulations, and the SMP will be granted.

### D.   Third Cause of Action for Private Nuisance

The Court now turns to the third cause of action for private nuisance before addressing Plaintiff's second cause of action.

Under California law, a nuisance is "[a]nything which is injurious to health . . . , or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway." Cal. Civ. Code § 3479.  A nuisance may be a public nuisance, a private nuisance, or both.  *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 124 (1971).  "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480.  Every other nuisance is private.  Cal. Civ. Code § 3481.

A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.  *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893, 937 (1996).  The elements of a private nuisance claim are: (1) interference with use and enjoyment of the

1  plaintiff's property that is (2) substantial, "i.e., that it caused the plaintiff to suffer 'substantial actual

2  damage,'" and (3) unreasonable.  *Id.* at 937–98.  "'[A]ny interest sufficient to be dignified as a

3  property right' will support an action based on a private nuisance[.]"  *Venuto*, 22 Cal. App. 3d at

4  125.  Whether an interference is substantial and unreasonable is judged by an objective standard of

5  a reasonable person.  *Id.* at 938.  In assessing substantial interference, "[i]f normal persons in that

6  locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a

7  significant one, even though the idiosyncrasies [sic] of the particular plaintiff may make it

8  unendurable to him."  *Id.* (quoting Restatement (Second) of Torts § 821F, com. d (1979)).  "The

9  primary test for determining whether the invasion is unreasonable is whether the gravity of the harm

10  outweighs the social utility of the defendant's conduct."  *Id.*  Both parties move for partial summary

11  judgment on Plaintiff's claim for private nuisance.  (Doc. 39 at 19–21; Doc. 45 at 14–16.)  The

12  Court addresses each element of the private nuisance claim in turn.

13      To establish the first element, Plaintiff asserts that it owns approximately 25 percent of land

14  within the Project Boundary and possesses flowage easements for the remainder of the private

15  property in the Reservoir, and the Contested Facilities interfere with both of these property interests.

16  (Doc. 39 at 20.)  With regard to the former property interest—Plaintiff's land in the Reservoir—it

17  is unclear to the Court how the Contested Facilities interfere with Plaintiff's use and enjoyment of

18  that property.  Plaintiff has not identified where in the Project Boundary any of its land is located,

19  nor has it explained how the Contested Facilities specifically interfere with Plaintiff's land.  In its

20  briefing, Plaintiff makes only the following cursory argument regarding interference based on an

21  alleged violation of the SMP:

22      This Court has already recognized that a violation of the SMP irreparably injures
        [Plaintiff].  [Citation.]  [The Contested Facilities] violate the SMP, which Plaintiff
23      obtained so that it could control the Project Boundary consistent with its FERC
        license.  [The Contested Facilities] within the Project Boundary therefore interfere
24      with [Plaintiff's] intended use and enjoyment of its property and its ability to
        maintain compliance with FERC directives.
25

26  (Doc. 39 at 20.)  A violation of the SMP, however, does not necessarily constitute interference with

27  Plaintiff's property.  *See, e.g.*, *Tri-Dam v. Schediwy*, No. 1:11–CV–01141–AWI, 2014 WL 897337,

28  at *10 (E.D. Cal. Mar. 7, 2014) ("Despite the fact that the parties agree that there is evidence of

violation of the SMP, Tri–Dam has failed to establish that the violation of the SMP would in fact violate the easement.").  Accordingly, Plaintiff has not shown that the Contested Facilities interfere, much less substantially and unreasonably interfere, with Plaintiff's use and enjoyment of its land within the Tulloch Reservoir.

Plaintiff also asserts substantial and unreasonable interference with its Flowage Easement. (Compl. at ¶ 57; Doc. 39 at 20.)  According to Plaintiff, its FERC license requires it to obtain control of all lands necessary for operation and maintenance of the Project (Doc. 39 at 9; FERC License at 34–35), so in 1957, Plaintiff obtained the Flowage Easement from Sanguinetti.  (RJN, Exhibit A.)

The parties dispute whether the Flowage Easement burdens Defendant's Property.  (Doc. 39 at 11; Doc. 46 at 12–13.)  Defendant contends that the recorded conveyance of the Flowage Easement contains a lengthy description of metes and bounds, and this description "is far beyond the ability of any ordinary person to interpret, and there is no attached map." (Doc. 46 at 13.)  Thus, Defendant asserts that "[o]nly an expert can testify to what part of [Defendant's] property is encumbered by the easement, and what part is not," and because Plaintiff has not submitted expert testimony, Plaintiff cannot prove this point.  (*Id.*)  This contention is unavailing.

In *Tri-Dam v. Michael*, No. 1:11–CV–2138–AWI–SMS, 2014 WL 1285644 (E.D. Cal. Mar. 28, 2014), the Court rejected a similar argument by the defendant that Plaintiff could not prove that the Flowage Easement burdened the defendant's property.  *Id.* at *4.  The Court noted that "[a] recitation of meets [sic] and bounds without production of documents explaining that [the defendant's] land falls within the description is inadequate to prove to this Court that the [s]ubject [p]roperty is burdened by the easement."  *Id.*  But because Plaintiff had also produced deposition testimony from the defendant's husband "indicating his awareness that the [s]ubject [p]roperty [wa]s burdened by the easement," the Court found that, taking the recorded conveyance of the Flowage Easement and the deposition testimony together, "no reasonable trier of fact could find that the [Flowage Easement] did not burden the [s]ubject [p]roperty."  *Id.*

Here, Plaintiff has produced a copy of the recorded conveyance of the Flowage Easement and deposition testimony from Defendant indicating his awareness that his Property is burdened by the Easement.  (RJN, Exhibit A; Doc. 40, Exhibit A, Deposition of Scott Frazier ("Frazier Dep.") at

38:20–42:5.)   Defendant, on the other hand, has adduced no evidence demonstrating that his Property is not burdened by the Flowage Easement.  Therefore, as in *Michael*, the Court finds that "Plaintiff's proffered evidence is such that no reasonable jury could . . . make the determination that [Defendant's] Property is not burdened by the easement." *Michael*, 2014 WL 1285644, at *4.

The Flowage Easement grants Plaintiff the right to "enter upon said land . . . and clear, destroy, or dispose of . . . any obstructions . . . and *any other thing* which would *in any way* interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof."  (RJN, Exhibit A (emphasis added).)   In considering this same easement, the Court in *Schediwy* found that "[t]his language is onerous but unambiguous.  [Plaintiff] has the right to destroy, clear or dispose of anything that in any way interferes with [Plaintiff's] use of the reservoir or with the waters." *Schediwy*, 2014 WL 897337, at *9.  The photographs submitted by Plaintiff show the waterslide extending from the Property over the water's edge, and the dock and personal watercraft ports sitting over and into the Reservoir waters. (Doc. 41, Exhibits A & B.)  Plaintiff contends that the Contested Facilities "siphon water from the lake" and "extend into the reservoir, impeding the free flow of water," thus interfering with Plaintiff's flowage easement.  (Doc. 52 at 8; Frazier Dep. 51:3–11.)

Whether that claimed interference is substantial and unreasonable, however, is disputed by the parties.  (*See* Doc. 39 at 21; Doc. 46 at 18–19.)  Plaintiff contends that the interference is unreasonable because the only social utility in Defendant's conduct in maintaining the Contested Facilities "is to [Defendant] himself and his guests," and this does not outweigh Plaintiff's "rights and responsibilities in maintaining order on the Reservoir in conformity with its FERC license." (Doc. 39 at 21.)  Defendant counters that there is no substantial and unreasonable interference given that Plaintiff waited decades to sue based on the Contested Facilities.[5]   (Doc. 46 at 18–19.) Defendant further contends that partial summary judgment should be granted in his favor because the Contested Facilities are consistent with, and in fact advance, the SMP's goals of "enhancing the quality of recreational opportunities at the reservoir[.]" (Doc. 45 at 15–16.)  Thus, Defendant claims

---

[5] As discussed below, the parties dispute when the dock was constructed, which bears on when Plaintiff first learned of the alleged nuisance.  (*See infra* Section E.2.e.)

that, because the Contested Facilities are consistent with Plaintiff's goals for the Reservoir, there can be no interference with Plaintiff's property interests.  (*Id.*)

Given the parties' competing claims, the Court finds that granting summary judgment for either party is not appropriate, because issues of substantial interference and unreasonableness are questions of fact for the jury, to be determined in light of all of the circumstances in a given case. *San Diego Gas & Elec. Co.*, 13 Cal. 4th 893 at 938–39 (observing that issue of substantial harm "is, of course, a question of fact that turns on the circumstances of each case," and "'[f]undamentally, the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case.'  [Citation.]"); *Hellman v. La Cumbre Golf & Country Club*, 6 Cal. App. 4th 1224, 1231 (1992) ("Determination whether something . . . is a nuisance in fact in a particular instance, is a question for the trier of fact.").

Based on the foregoing, both motions for partial summary judgment on Plaintiff's third cause of action for private nuisance will be denied.

### E.    Second Cause of Action for Public Nuisance

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."  Cal. Civ. Code § 3480.  Unlike an action for private nuisance, "property interests are not required to bring a cause of action for public nuisance." *Orange Cnty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 402 (2017). Plaintiff asserts two theories in support of its claim for public nuisance: nuisance per se and common law public nuisance.  (Compl. at ¶¶ 43–51; Doc. 39 at 14–19.)  Both parties move for partial summary judgment on the public nuisance claim.  (Doc. 38 at 14–19; Doc. 45 at 9–16.)  For the reasons set forth below, Plaintiff's motion will be granted, and Defendant's motion will be denied.

#### 1.    Standing

Because actions for public nuisance are "aimed at the protection and redress of *community* interests," *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1103 (1997) (emphasis in original), as a general rule, only public entities authorized by law may sue for a public nuisance on behalf of the community.  *See* Cal. Civ. Code § 3494 ("A public nuisance may be abated by any public body or

officer authorized thereto by law.").  A private person, however, may maintain an action for a public nuisance, "if it is specially injurious to himself, but not otherwise."  Cal. Civ. Code. § 3493.

Plaintiff contends it meets the requirements for standing under California Civil Code § 3934 ("Section 3934") because it is a public agency, and its FERC license authorizes it to abate public nuisances.  (Doc. 39 at 13; Doc. 52 at 5.)  Plaintiff alternatively contends it has standing as a private entity under California Civil Code § 3493 ("Section 3493").  (*Id.*)  Plaintiff claims that the Contested Facilities are "specially injurious" to Plaintiff because they are unpermitted, given Plaintiff's obligation under its FERC license to regulate the Project Boundary, Plaintiff's failure to address unpermitted facilities could lead to the revocation of its license.  (Doc. 39 at 13–14; Doc. 52 at 10.)  Defendant asserts that Plaintiff lacks standing to sue for a public nuisance under either theory.  (Doc. 46 at 13–16.)  For standing under Section 3494, Defendant contends that Plaintiff is neither a public agency, nor authorized by law to abate public nuisances.  (*Id.* at 13–14.)  As for Section 3493, Defendant claims that Plaintiff cannot prove the Contested Facilities are "within" Plaintiff's easement, and that the facilities are "specially injurious" to it.  (*Id.* at 14.)

To have standing under Section 3494, Plaintiff must be (1) a public body and (2) authorized by law to abate public nuisances.  Cal. Civ. Code § 3494.  Plaintiff is a joint venture between the Oakdale Irrigation District and the South San Joaquin Irrigation District, which are both public agencies.  *See California State Grange v. Nat'l Marine Fisheries Serv.*, 620 F. Supp. 2d 1111, 1146 (E.D. Cal. 2008) (noting that the Oakdale Irrigation District and the South San Joaquin Irrigation District are "public agencies organized and operating pursuant to California Law [Cal. Water Code §§ 20500 *et seq.*].").[6]  (Zimmerman Decl. at ¶ 3; Resolution.)  California law defines a "public agency" to include "any joint powers authority formed" by any existing public agencies.  Cal. Gov't. Code § 6500.  As Plaintiff was formed via a joint power agreement between two public agencies, Plaintiff is also a public agency.

Plaintiff, however, is not authorized by law to abate public nuisances.  In *Lamont Storm Water District v. Pavich*, 78 Cal. App. 4th 1081 (2000), the California Court of Appeal held that

---

[6] Plaintiff is governed by a joint board of directors comprised of the five-member boards of the Oakdale Irrigation District and the South San Joaquin Irrigation District.  (Zimmerman Decl. at ¶ 3.)

only public bodies explicitly authorized to abate a public nuisance may do so. *Id.* at 1084–85.  The plaintiff in *Lamont* was a storm water district created pursuant to the Storm Water District Act of 1909, Cal. Water Code App. §§ 13-1 *et seq.*, with the power to sue and be sued and to "do any and all other acts and things necessary or required for the protection of the lands in said district from damage from storm waters and from waters of any innavigable stream, watercourse, canyon or wash[.]"  *Id.* at 1084.  The Court of Appeal reasoned that the general power to sue and be sued did not constitute authorization to abate public nuisances because "when the Legislature has intended to grant the power to abate a nuisance, it has done so specifically and in clear terms."  *Id.*  For example, in addition to authorizing sanitary districts to sue and be sued in California Health and Safety Code § 6511, the state legislature specifically provided in Health and Safety Code § 6523.3 that the "district may also petition the superior court for the issuance of a preliminary or permanent injunction . . . restraining any person from the continued violation of any ordinance of the district." *Id.* at 1085.  Other examples include California Civil Procedure Code § 731, which specifically grants county district attorneys and city attorneys the authority to abate a public nuisance, and California Health and Safety Code § 2060, which expressly gives mosquito abatement and vector control districts the authority to abate public nuisances.  *Id.*  Noting the absence of any similar provision in the Storm Water District Act, the Court of Appeal held that the plaintiff storm water district could not maintain a public nuisance action.  *Id.*

Here, Plaintiff points to its FERC license as its source of authority for abating public nuisances: "Not only is [Plaintiff] authorized to abate public nuisances such as the ones at issue here—unpermitted facilities on the reservoir—it is *required* to abate them under its FERC license." (Doc. 52 at 5.)  In asserting its alleged authority to abate nuisances, Plaintiff makes vague references to "the entire statutory and administrative context of [Plaintiff's] authority and responsibilities as a licensee under the Federal Powers Act, its license with [FERC], and the operative [SMP]."  (*Id.*) This is insufficient to meet the level of specificity demanded in *Lamont*.  Plaintiff has not identified any statute, or provision in its FERC license, that expressly authorizes it to abate public nuisances. The Court, therefore, finds that Plaintiff is not authorized to abate public nuisances and thus does not have standing under Section 3494.

This is not, however, the end of the standing inquiry.  "A public agency may bring a nuisance cause of action on its own behalf to the same extent as a private plaintiff, and under theories of both private and public nuisance, where the public agency's own property rights are affected by the nuisance." *Orange Cnty. Water Dist.*, 14 Cal. App. 5th at 402; Cal. Code Civ. P. § 731 ("An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor.").  Here, Plaintiff contends that the Contested Facilities interfere with Plaintiff's Flowage Easement and real property on the Tulloch Reservoir.  (Compl. at ¶¶ 54, 57; Doc. 39 at 20.)  Thus, the Court considers whether Plaintiff has standing to bring a public nuisance claim as a private party under Section 3494.

A private plaintiff must suffer a special injury to maintain an action for public nuisance.  *See* Cal. Civ. Code § 3493.  That is, the damage suffered by the plaintiff "must be different in kind and not merely in degree from that suffered by other members of the public." *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1040 (1994); *see also Schaeffer v. Gregory Village Partners, L.P.*, 105 F. Supp. 3d 951, 966 (N.D. Cal. 2015) (in an action for public nuisance, "the plaintiff's harm must be different from the type of harm suffered by the general public").  However, "[a] property interest sufficient to support a cause of action for private nuisance is generally sufficient to support a cause of action for public nuisance as well." *Orange Cnty. Water Dist.*, 14 Cal. App. 5th at 416–17; *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009) ("[W]hen the nuisance is a private as well as a public one, there is no requirement the plaintiff suffer damage different in kind from that suffered by the general public.").  This is because "a private nuisance is a civil wrong based on disturbance of rights in land while a public nuisance is not dependent upon a disturbance of rights in land but upon an interference with the rights of the community at large." *Venuto*, 22 Cal. App. 3d at 114.

As discussed above (*see* Section IV.D.), because the Court has determined that Plaintiff has a cognizable private nuisance claim, Plaintiff also has standing to assert a public nuisance claim. *See Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX, 2020 WL 1650031 (C.D. Cal. Mar. 17, 2020) (declining to reach the question of special injury where the plaintiffs had a

private nuisance claim).

## 2. Nuisance Per Se

"[A] nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance." *People ex rel. Trutanich v. Joseph*, 204 Cal. App. 4th 1512, 1524 (2012) (quoting *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1206 (1996)). California Government Code § 38771 ("Section 38771") provides: "By ordinance the city legislative body may declare what constitutes a nuisance." *See also City of Bakersfield v. Miller*, 64 Cal. 2d 93, 100 (1966) (noting that a city "has the power to define by statue the standards by which courts are to judge whether a nuisance exists" pursuant to Section 38771).

"[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." *Beck Dev. Co.*, 44 Cal. App. 4th at 1207. "When a statute identifies an object, substance, activity, or circumstance to be a nuisance, the Court asks only (1) whether the statute has been violated and (2) whether the statute is constitutional." *Tri-Dam v. Yick*, No. 1:11–CV–01301–AWI–SMS, 2016 WL 4061348, at *3 (E.D. Cal. July 28, 2016) (citing *Net Connection Hayward, LLC v. City of Hayward*, No. C 13–1212 SC, 2013 WL 3786635, *8 (N.D. Cal. July 18, 2013); *Miller*, 64 Cal. 2d at 100). "If the answer to both questions is yes, then no additional showing need be made in order to abate the nuisance." *Id.* (citing *City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1166 (2009) (rejecting the defendants' argument that the city needed to show that the defendants' conduct caused "actual harm" because such a showing is not required to prove a nuisance per se)).

Here, the Ordinance provides that "[a]ny dock, building or structure set up, erected, built, moved or maintained" without complying with the relevant permitting requirements "is unlawful and constitutes a public nuisance." Calaveras County, Cal., Mun. Code § 20.10.120. Furthermore, "[a]ny dock or other facility installed prior to 1979 shall be considered 'grandfathered' into legal existence. Any expansion, reconstruction or other alteration shall be subject to full compliance with current regulations." *Id.*

Plaintiff contends that it is undisputed that Defendant does not have permits from Plaintiff

for any of the Contested Facilities, and thus, each of Defendant's dock, personal watercraft ports, and waterslide constitute a separate public nuisance per se. (Doc. 39 at 14–16.) Defendant responds first that Plaintiff cannot prove that the Contested Facilities are within the Project Boundary. (Doc. 46 at 10–12.) Second, Defendant claims that the Contested Facilities are grandfathered by the SMP and/or the Ordinance based on their dates of construction. (*Id.* at 7–8.) Third, Defendant claims that he has "not personally violate[d]" the Ordinance because the contested facilities were already in existence at the time Defendant acquired an ownership interest in the Property in 2011. (*Id.* at 8–10.) Lastly, Defendants asserts that the Ordinance should not be construed to apply retroactively, and any such application to the Contested Facilities would be unconstitutional because the Contested Facilities were already in existence at the time of the Ordinance's enactment. (Doc. 45 at 12–14.) The Court addresses the parties' contentions in turn.

### a. The Project Boundary

Defendant opposes Plaintiff's motion for partial summary judgment on the grounds that Plaintiff cannot prove that the Contested Facilities are within the Project Boundary and thus subject to the Ordinance. (Doc. 46 at 10–12.) Specifically, Defendant contends that location of the Project Boundary is within the knowledge of experts only, and Plaintiff has not identified any experts in support of its claims. (*Id.* at 11.)

The Project Boundary is defined as the 515-foot elevation contour surrounding the Reservoir. (FERC License at 3.) Defendant does not dispute that the high water mark of the Tulloch Reservoir is 510 feet. (*Id.*; SMP at 4-3.) Plaintiff has submitted photographs of the Contested Facilities showing the dock and personal watercraft ports sitting on the water and extending into the Reservoir. (Doc. 41, Exhibits A & B.) This would lead an ordinary person to conclude that all of the water, which reaches a maximum level of 510 feet, is thus below the 515-foot elevation contour, i.e., the Project Boundary, and by extension, anything touching the water, e.g., the personal watercraft ports and dock, must also be within the Project Boundary.

With regard to the waterslide, the photographs show the opening of the waterslide extending above the edge of the Property. (Frazier Dep., Exhibits 2 & 3; Doc. 41, Exhibit A.) Two of the photographs show a bar extending from the ground, supporting the waterslide's opening. (Frazier

Dep., Exhibit 3; Doc. 41, Exhibit A.)  A white pipe that extends into the Reservoir and draws water can be seen in one of the photographs.  (Frazier Dep. at 58:18–59:13, Exhibit 2.)  During his deposition, Defendant indicated that when the Reservoir water reached the water line mark, "the slide would be over the water."  (Frazier Dep. at 60:5–13.)  Defendant further indicated that the waterslide pumped water from the Reservoir.  (*Id.* at 51:3–11.)  Taken all together, the Court finds that an ordinary person considering this evidence would be able to determine that the waterslide was within the Project Boundary, as parts of the waterslide exist within the five-feet of airspace above the Reservoir's high water mark, thus bringing the waterslide within the Project Boundary.  Indeed, Defendant was able to so reason at his deposition.  (*Id.* at 50:21–51:2 ("[S]o part of the tubing there that we're calling a waterslide crosses over the top of the reservoir, which must mean that there is, to some people's interpretation, it goes over a 515 mark of some sort.")).

Based on the evidence adduced, the Court finds that it is undisputed that the Contested Facilities are within the Project Boundary.

### b.  The SMP's Grandfather Clause

Citing to a footnote in the 2015 SMP, Defendant claims that the SMP grandfathers all facilities built before February 16, 2006, which would include all of the Contested Facilities.  (Doc. 46 at 8.)  Plaintiff responds that the SMP language relied upon by Defendant is not so broad.  (Doc. 52 at 4.)  Footnote 2 of the SMP states:

> The 2002 SMP and this revised SMP recognize that there are existing, legally installed facilities within the FERC Project Boundary that do not require the Commission's approval, assuming the facilities were legally installed and installation was completed by February 16, 2006.  These facilities are considered 'grandfathered.'  However, any modifications to these facilities are subject to the provisions of the SMP in effect at that time.

(SMP at 1-1 n.2.)

The plain language of the SMP does not support Defendant's expansive reading.  What is considered grandfathered is limited by the phrase "assuming the facilities were legally installed." (*Id.*)  Defendant has adduced no evidence that the Contested Facilities were "legally installed" within the meaning of this provision and thus grandfathered under the provision.  It is undisputed that Defendant has never applied for a permit for any of the Contested Facilities (PSUF 6, 7, 8; Doc.

40, Exhibits E&F, Requests for Admissions ("RFA") and Responses, Nos. 4, 7, 10), and Plaintiff has never issued permits for the Contested Facilities to anyone (Zimmerman Decl. at ¶ 14; Doc. 50-3, Declaration of Susan Larson ("Larson Decl.") at ¶ 5). Indeed, the crux of the instant lawsuit is whether the Contested Facilities have been legally installed, specifically, whether they are subject to Plaintiff's permitting requirements.

In sum, the Court finds that the SMP does not grandfather all facilities installed prior to February 16, 2006, and Defendant has not otherwise demonstrated the applicability of the SMP grandfather provision to the Contested Facilities. Therefore, Defendant is not entitled to summary judgment on the basis that the Contested Facilities are grandfathered by the SMP.

### c. Defendant's Liability as a Possessor of Land

Defendant contends he is entitled to partial summary judgment on the nuisance per se claim because he did not *personally* build, move, or maintain any of the contested facilities. (Doc. 45 at 11; Doc. 46 at 17–18.) But as Defendant concedes, "possessors of land can be liable for a nuisance on the land even when they did not create the nuisance." (Doc. 46 at 18.) "The law reasonably imposes a duty on a possessor of land—where the possessor has control—do not produce a nuisance." *Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 676 (9th Cir. 2011) (citing *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.*, 153 Cal. App. 3d 605, 620–22 (1984)); Restatement (Second) of Torts § 838 (1979)). (*See* Doc. 46 at 18.) Accordingly, the Court finds that Defendant is not entitled to summary judgment on this basis.

### d. Constitutionality of the Ordinance as Applied

Defendant moves for partial summary judgment on the grounds that the Ordinance would be unconstitutional if applied retroactively to the Contested Facilities. (Doc. 45 at 11.) As a threshold matter, Defendant first contends that the Ordinance should not be construed to apply retroactively. (*Id.* at 12.) Should the Court find retroactivity, however, Defendant asserts that retroactive application of the Ordinance to the Contested Facilities would be unconstitutional because Defendant has vested rights to the Contested Facilities. (*Id.* at 12–14.) Plaintiff counters that the language of the Ordinance manifests the legislative body's intent for retroactive application. (Doc. 50 at 16.) Plaintiff further asserts Defendant does not have vested rights to the Contested Facilities.

1  (*Id.* at 16–17.)

2       The Court first considers whether the Ordinance should be construed to apply retroactively.

3  Statutes do not operate retroactively unless the legislative body enacting the measure clearly

4  indicates its intent that they do so.  *Western Security Bank v. Superior Court*, 15 Cal. 4th 232, 243

5  (1997); *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1208–09 (1988).  A legislative body's

6  intent with regard to prospective or retroactive application may be determined either from the

7  language in the statute itself or, if the extrinsic sources are sufficiently clear, legislative history.

8  *Western Security Bank*, 15 Cal. 4th at 243; *Evangelatos*, 44 Cal. 3d at 1209–10.  The general

9  presumption against retroactive application of statutes is subordinate to "the transcendent canon of

10 statutory construction that the design of the Legislature be given effect."  *In re Marriage of Bouquet*,

11 16 Cal. 3d 583, 587 (1976).

12      The Ordinance provides: "Any dock or other facility installed prior to 1979 shall be

13 considered 'grandfathered' into legal existence.  Any expansion, reconstruction or other alteration

14 shall be subject to full compliance with current regulations."  Calaveras County, Cal., Mun. Code §

15 20.10.120.  By its plain terms, the Ordinance exempts all facilities installed prior to 1979, unless

16 they are subsequently expanded, reconstructed, or otherwise altered.  As Plaintiff contends, (Doc.

17 50 at 16), the 1979 cut-off date signals the Board's intention that the Ordinance apply to all facilities

18 installed after that year.  If the Board did not want the Ordinance to apply retroactively, then it

19 simply could have set the cut-off as 2008, the year the Ordinance was enacted.  Furthermore, the

20 Ordinance's stated purpose "is to provide consistent policies for the regulation, operation and

21 enforcement activities at Tulloch Reservoir.  The goal is to ensure that the quality of Tulloch

22 Reservoir as a resource for homeowners, public, recreation, fisheries, power generation and drinking

23 supply is maintained."  Calaveras County, Cal., Mun. Code § 20.10.110.  Retroactive application of

24 the Ordinance advances the purpose of maintaining the Reservoir, as it brings more facilities within

25 the ambit of Plaintiff's permitting process and authority, which are designed in part to "[p]rotect

26 and enhance the scenic, environmental, and public recreational value of the reservoir."  (SMP at 1-

27 6.)  The Court, therefore, finds that the Ordinance applies retroactively.

28      When a legislative body clearly intends a statute or ordinance to operate retroactively, that

21

intent must be enforced unless retroactivity is barred by constitutional constraints.  *Western Security Bank*, 15 Cal. 4th at 243–44.  "Retrospective application may be unconstitutional, however, if it deprives a person of a vested right without due process of law."  *Davidson v. Cnty. of San Diego*, 49 Cal. App. 4th 639, 646 (1996).  "The doctrine of vested rights is ordinarily applied when a local agency attempts to prevent the completion or use of a project on the grounds that the project, while lawful at the time a permit was issued, had been rendered unlawful by an intervening change in the law."  *Attard v. Bd. of Supervisors of Contra Costa Cnty.*, 14 Cal. App. 5th 1066, 1076 (2017).  "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit.  Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied."  *Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 791–99 (1976) (citations omitted).

Defendant cursorily asserts he has vested rights to the Contested Facilities, indicating in a footnote that "vested" means his property rights "are not subject to a condition precedent."  (Doc. 45 at 13 (quoting *In re Marriage of Buol*, 39 Cal. 3d 751, 757 n.6 (1985)).)  Plaintiff contends that Defendant does not have vested rights to the Contested Facilities, as Defendant has never obtained permits for the Contested Facilities, and because the Property is burdened by Plaintiff's Flowage Easement, granted in 1957—long before any of the Contested facilities were built.  (Doc. 50 at 16–17.)  Even assuming the existence of vested rights, Plaintiff claims that those rights may be impaired if they pose a public nuisance or threat to health and safety.  (Doc. 52 at 8–9.)

"[T]he vested rights theory is predicated upon estoppel of the governing body."  *Anderson v. City Council of City of Pleasant Hill*, 229 Cal. App. 2d 79, 89 (1964).  "This is a principle of equitable estoppel which may be applied against the government where justice and fairness require it."  *Santa Monica Pines, Ltd. v. Rent Control Bd.*, 35 Cal. 3d 858, 866–67 (1984), *disapproved on other grounds in City of West Hollywood v. Beverly Towers*, 52 Cal. 3d 1184, 1192 (1991).  "An equitable estoppel requiring the government to exempt a land use from a subsequently imposed regulation must include (1) a promise such as that implied by a building permit that the proposed

use will not be prohibited by a class of restrictions that includes the regulation in question, and (2) reasonable reliance on the promise by the promisee to the promisee's detriment." *Id.* at 867.  No vested right exists "unless and until both of those elements against the government are established." *Id.*

The Court finds that Defendant has no vested rights because he has failed to demonstrate that Calaveras County ("the County") made a representation to him that the Contested Facilities were permissible.  According to Defendant's deposition testimony, he spoke with the County about whether any of the Contested Facilities had been permitted by Plaintiff or the County, and he "was given no conclusive answer." (Frazier Dep. at 31:1–24.)  The County also told Defendant that it "had never been in the business of permitting docks" and to "call [Plaintiff] about docks, it's not their business." (*Id.* at 31:24–32:4.)  This evidence indicates that the County was in no position to make a promise regarding the permissibility of the Contested Facilities, much less one on which Defendant could reasonably rely.

To the extent Defendant is claiming he has vested rights to the Contested Facilities simply because they were in existence prior to the enactment (*see* Doc. 45 at 12), that contention is unavailing.  As noted above, it is undisputed that Defendant has never applied for a permit for any of the Contested Facilities (PSUF 6, 7, 8; RFAs and Responses, Nos. 4, 7, 10), and Plaintiff has never issued permits for the Contested Facilities to anyone (Zimmerman Decl. at ¶ 14; Larson Decl. at ¶ 5). "Courts have yet to extend the vested rights or estoppel theory to instances where a developer lacks a building permit or the functional equivalent, regardless of the property owner's detrimental reliance on local government actions and regardless of how many other land use and other preliminary approvals have been granted . . . . California courts apply this rule most strictly[.]" *Hermosa Beach Stop Oil Coal. v. City of Hermosa Beach*, 86 Cal. App. 4th 534, 553 (2001) (quoting *Toigo v. Town of Ross*, 70 Cal. App. 4th 309, 322 (1998)).

Even assuming Defendant had vested rights in the Contested Facilities, it is settled that "[v]ested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." *In re Marriage of Buol*, 39 Cal. 3d 751, 760–61 (1985).  "The constitutional question,

1    on principle, therefore, would seem to be, not whether a vested right is impaired [by a change in the
2    law], but whether such a change reasonably could be believed to be sufficiently necessary to the
3    public welfare as to justify the impairment." *In re Marriage of Bouquet*, 16 Cal. 3d at 592 (citations
4    and internal quotation marks omitted).

5        "The vested rights doctrine in the land use context is subject . . . to the qualification that such
6    a vested right, while immune from divestment through ordinary police power regulations, may be
7    impaired or revoked if the use authorized or conducted thereunder constitutes a menace to the public
8    health and safety or a public nuisance.  Public welfare demands may even require the complete
9    destruction of vested property rights." *Davidson*, 49 Cal. App. 4th at 649 (citations and internal
10   quotation marks omitted; italics removed).  Determining whether a particular retroactive provision
11   violates due process by impairing a vested right requires weighing several factors: "'the significance
12   of the state interest served by the law, the importance of the retroactive application of the law to the
13   effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that
14   reliance, the extent of actions taken on the basis of that reliance, and the extent to which the
15   retroactive application of the new law would disrupt those actions.'" *In re Marriage of Buol*, 39
16   Cal. 3d at 761 (quoting *In re Marriage of Bouquet*, 16 Cal. 3d at 592).  "Probably the single most
17   important factor to be considered in determining whether a particular impairment is constitutionally
18   permissible is the nature and extent of the impairment.  The severity of the impairment measures
19   the height of the hurdle the state legislation must clear." *Donlan v. Weaver*, 118 Cal. App. 3d 675,
20   682 (1981) (citation and internal quotation marks omitted).

21       Weighing the relevant factors, the Court finds that retroactive application of the Ordinance
22   was sufficiently necessary to the public welfare.  As discussed above, the purpose of the Ordinance
23   is "to provide consistent policies for the regulation, operation and enforcement activities at Tulloch
24   Reservoir," with the goal to "ensure that the quality of Tulloch Reservoir as a resource for
25   homeowners, public, recreation, fisheries, power generation and drinking supply is maintained."
26   Calaveras County, Cal., Mun. Code § 20.10.110.  The deeming of certain unpermitted facilities to
27   be public nuisances indicates that the Board's interest in enacting the Ordinance was to advance
28   public safety and welfare.  Calaveras County, Cal., Mun. Code § 20.10.120.  Furthermore, the nature

of the impairment to any alleged vested right is not severe.  The Ordinance does not necessarily require the removal of any unpermitted facility that is not grandfathered.  The Ordinance instead provides that "[a]ll facilities installed, constructed or maintained within the reservoir and FERC project boundary *shall be in full compliance with appropriate permitting regulations* of the county and Plaintiff."  Calaveras County, Cal., Mun. Code § 20.10.110 (emphasis added).  Thus, any compliance issues based on facilities that are merely unpermitted could presumably be remedied by obtaining permits from Plaintiff and the County.  If this is "a pure paperwork issue," as Defendant claims (*see* Doc. 45 at 14), any impairment to Defendant's rights would be minimal, as all he would have to do is obtain the proper permits to comply with the Ordinance.

For the foregoing reasons, the Court finds that Defendant is not entitled to summary judgment on the nuisance per se claim on the grounds that the Ordinance would be unconstitutional as applied.  Having determined that the Ordinance applies retroactively, meaning that "[a]ny dock, building or structure set up, erected, built, moved or maintained" without a permit after 1979 "constitutes a public nuisance," Calaveras County, Cal., Mun. Code § 20.10.120, the Court next addresses whether the dock, personal watercraft ports, and waterslide are nuisances per se.

### e.  The Dock

The parties dispute when the dock at issue was constructed and whether it is grandfathered under the Ordinance.  (Doc. 46 at 7; Doc. 52 at 3–4.)  Defendant claims that the dock was built in 1971, asserting that "county records show that there was a reinforced-concrete slip dock built at the Property in 1971, and appraised in 1973 and 1978."  (Doc. 45 at 9; Frazier Decl., Exhibit 2.)  Plaintiff claims that the dock was built in approximately 1992 and improved in 2008.  (Doc. 50-7 at 3.) Plaintiff further contends that the dock referenced in the county records is not the dock currently at issue: "those records at issue show that **a** dock was present in 1971."  (Doc. 52 at 3 (emphasis in original).)  According to Plaintiff, photographs from its records from 1978 show that the only dock present on the Property at the time was a reinforced concrete boat slip underneath the house.  (Doc. 52 at 3; Zimmerman Decl., Exhibit D.)  In fact, the records 1971 county records include a notation next to the entry for "Boat Slip" that reads "(H. Re-enforced Conc")."  (Doc. 52 at 3; Frazier Decl., Exhibit 2.)  Furthermore, Marks, the live-in caretaker for the Property from 2000 through 2016,

declared that no portion of the slip docks visible in the recent photographs was installed prior to 1991 when he first became familiar with the Property, and the portion that he helped build was not installed until 2008.  (Marks Decl. ¶ 5.)  Based on the parties' proffered evidence, the Court finds that there is a genuine dispute of material fact as to when the dock was constructed and thus whether it is grandfathered.

Plaintiff makes the alternative contention that Defendant violated the Ordinance because the dock was maintained without a permit.  (Doc. 39 at 15–16.)  Plaintiff has adduced evidence that two additional docks extending into the lake were added at the Property and connected to the existing dock as part of a settlement between Defendant and another property owner.  (Frazier Dep. at 60:19–61:11.)  Defendant does not rebut this evidence, instead claiming that "those docks were only tied up temporarily until he sold them," and the docks were not subject to the Ordinance because "they were not permanent structures" and thus not "installed, constructed, or maintained."  (Doc. 51 at 10.)

With regard to grandfathered facilities, the Ordinance provides: "Any expansion, reconstruction or other alteration shall be subject to full compliance with current regulations."  Calaveras County, Cal., Mun. Code § 20.10.120.  "Facility expansion" is defined as "the modification of an existing facility that results in an increase of its reservoir extension, increased decking square footage, increased dock size, an increase in the number of boats it can accommodate, or increases or decreases water storage quantities."  *Id.* at § 20.10.100.

Assuming the dock was grandfathered, the Court finds that the addition of the two "temporary" docks to the existing dock constituted an expansion that was subject to permitting requirements.  The Ordinance does not appear to distinguish between temporary and permanent alterations.  In fact, "facility expansion" is broadly defined to include any "modification of an existing facility that results in an increase of its reservoir extension, increased decking square footage, increased dock size, [or] an increase in the number of boats it can accommodate[.]"  Whether temporary or permanent, the addition of two docks to the existing dock increased the combined facility's extension, square footage, and size, thus bringing the docks within the meaning

a "facility expansion."[7]  Accordingly, as no permit was obtained for the expansion of the existing

dock, as required by the Ordinance, the Court finds that the dock is a nuisance per se.

### f.   The Personal Watercraft Ports and Waterslide

Plaintiff has adduced evidence that the personal watercraft ports were installed in the mid-

1990s and the waterslide was installed in 2004.  (Marks Decl. at ¶¶ 4, 8.)  Defendant has not

presented any evidence rebutting these dates of installation, nor does he contend that these facilities

were constructed prior to 1979 and thus grandfathered under the Ordinance.  Again, the evidence is

undisputed that neither Defendant nor previous owners of the Property sought permits for these

facilities, and Plaintiff has never issued permits for these facilities.  (PSUF 6, 7, 8; RFAs and

Responses, Nos. 4, 7, 10; Zimmerman Decl. at ¶ 14; Larson Decl. at ¶ 5; Marks Decl. at ¶¶ 4, 6.)

The Ordinance provides that "[a]ll facilities installed, constructed or maintained within the reservoir

and FERC project boundary shall be in full compliance with appropriate permitting regulations of

the county and [Plaintiff]."  Calaveras County, Cal., Mun. Code § 20.10.100.  As the Court has

determined that the Ordinance applies retroactively, and the personal watercraft ports and waterslide

were installed within the Project Boundary after 1979, the relevant owner of the Property was

required to obtain permits for those facilities when the Ordinance was enacted in 2008.  Because the

personal watercraft ports and waterslide are still unpermitted, the Court finds that they each

constitute a separate nuisance per se.[8]

### F.   Fourth Cause of Action for Trespass

Defendant moves for partial summary judgment, or, alternatively, judgment on the

pleadings, on Plaintiff's claim for trespass.  (Doc. 45 at 17.)  "Trespass is an invasion of the

plaintiff's interest in the exclusive possession of land."  *McBride v. Smith*, 18 Cal. App. 5th 1160,

1173 (2018).  "'The essence of the cause of action for trespass is an "unauthorized entry" onto the

land of another.' [Citation.]"  *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 1480

(1986).  To state a cause of action for trespass, a plaintiff must allege an unauthorized and tangible

---

[7] Adopting Defendant's construction of the Ordinance would permit landowners to install "temporary" facilities indefinitely and evade permitting requirements.  Such an interpretation is in clear conflict with the Ordinance's stated purpose and goal.

[8] In view of this determination, the Court declines to address Plaintiff's common law claim for public nuisance.

entry on the land of another, which interfered with the plaintiff's exclusive possessory rights. *McBride*, 18 Cal. App. 5th at 1174.  Defendant contends that the trespass claim fails as a matter of law because he is the owner of the Property; thus, the two elements of exclusive possession and unauthorized entry cannot be satisfied:  (Doc. 45 at 17.)  Plaintiff does not dispute this, citing to *McBride* and stating in a footnote: "It appears the trespass claim is subject to dismissal."  (Doc. 50 at 10 n.3).  Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's fourth claim for trespass will be granted.

### G.      Fifth Cause of Action for Interference with Express Easement

Defendant moves for partial summary judgment on Plaintiff's claim for interference with express easement, asserting only that, "[f]or the same reasons that the [Contested Facilities] are not a nuisance, they do not interfere with any property rights Plaintiff may possess."  (Doc. 45 at 10.)  An easement is an interest in the land of another that gives the easement holder the right to use the land of the other person and/or restricts the use by the fee owner of her own land.  *Moylan v. Dykes*, 181 Cal. App. 3d 561, 568 (1986).

> [T]he servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights.  Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited . . . unless justified by needs of the servient estate.  In determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement . . . and subject to any different conclusion based on the intent or expectations of the parties[.]

*Dolnikov v. Ekizian*, 222 Cal. App. 4th 419, 429–30 (2013) (citations and internal quotations marks omitted; italics removed).

As discussed above, Defendant contends that the Contested Facilities are consistent with Plaintiff's goals for the Reservoir such there can be no interference with Plaintiff's property interests.  (Doc. 45 at 14–16).  Plaintiff, however, has adduced evidence that would support a finding of interference with the Flowage Easement.  (Doc. 41, Exhibits A & B; Frazier Dep. 51:3–11; *see supra* Section IV.D.)  The Court, therefore, finds that a genuine dispute of material fact exists, and Defendant's motion for partial summary judgment on Plaintiff's fifth claim for interference with

express easement will be denied.

### H.   Defense of Laches

Defendant moves for summary judgment on his affirmative defense of laches.  (Doc. 45 at 9–10.)  Plaintiff opposes the motion on the grounds that laches cannot bar a public nuisance claim, and in any event, there are triable issues of fact as to whether laches applies.  (Doc. 50 at 11–14.)  "Laches is an equitable, affirmative defense which requires a showing of both an unreasonable delay by the plaintiff in bringing suit, plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay."  *Highland Springs Conf. & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 282 (2016) (citations and internal quotation marks omitted).

The Court finds that summary judgment on the defense of laches is not appropriate.  First, as Plaintiff contends, laches cannot bar a public nuisance claim.  Civil Code § 3490 expressly provides that "[n]o lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right."  Here, Plaintiff has established that the Contested Facilities obstruct the public use and enjoyment of the Reservoir and pose a threat to public safety.  The Ordinance makes all facilities set up, erected, built, moved, or maintained without a permit a public nuisance, which the Court has determined includes the Contested Facilities.  Calaveras County, Cal., Mun. Code § 20.10.120.  Furthermore, Plaintiff has received "multiple complaints and inquiries over the years about the number, size, and location of dock facilities and whether the waterslide was legal."  (Larson Decl. at ¶ 6.)  Zimmerman, the general manager for Plaintiff, stated in his declaration:

> [W]hile it may seem as though one facility improperly placed, or not in compliance with SMP regulations, might not have operational consequences, the incremental impact of each non-conforming facility leads to a cumulative impact as there are hundreds of docks and other facilities at Tulloch Reservoir.  Improperly placed facilities create the very real potential for profoundly negative impacts on reservoir operations, navigability, and safety of the public.

(Zimmerman Decl. at ¶ 16.)  Therefore, the Court finds that laches is not a bar to the public nuisance claim as a matter of law.[9]  *See City of Turlock v. Bristow*, 103 Cal. App. 750, 756 (1930) ("Neither

---

[9] The Court notes that "under certain particular circumstances it has been held that laches may prohibit a public nuisance abatement cause of action where, after a 'weighing process,' the court has determined that the 'injustice to be avoided was sufficient to counterbalance the effect of the defense upon a public interest.'"  *Kahn v. Price*, 69 Cal. App. 5th 223, 284 n.15 (2021) (quoting *City and County of San Francisco v. Pacello*, 85 Cal. App. 3d 637, 646 (1978).  This exception

prescriptive rights, laches, nor the statute of limitations is a defense against the maintenance of a public nuisance."); *Wade v. Campbell*, 200 Cal. App. 2d 54, 61 (1962) (case involving a suit between private parties where the court held, "We are of the opinion that the better rule is that the defense of laches and the bar of the statute of limitations are inapplicable [to public nuisances]."); *Est. of Goldberg by & through Rubin v. Goss-Jewett Co., Inc.*, 738 F. App'x 897, 901 (9th Cir. 2018) (case involving a suit between private parties where the Ninth Circuit held that the district court erred in dismissing the public nuisance claim as barred by laches).  *Cf. Zack's, Inc. v. City of Sausalito*, 165 Cal. App. 4th 1163, 1191 (2008) (case involving a private citizen against the City of Sausalito where the court found that "[b]ecause the nuisance . . . allege[d] fits the statutory definition of a public nuisance, it cannot be time-barred.") (internal citation omitted).

        The Court also concludes that there exists a genuine dispute of material fact related to the application of laches as to the remaining claims.  With regard to the element of prejudice, Defendant contends that "Plaintiff knew that [Defendant] was going to buy Spica in 2011, and that he was depending on the [Contested Facilities as] amenities."  (Doc. 45 at 10; Frazier Decl. ¶ 10.)  Plaintiff, however, denies any such knowledge.  (Doc. 50 at 13–14.)  Larson, the FERC license coordinator for Plaintiff, stated that she did not recall being advised prior to 2011 that Defendant was purchasing, or had any interest in purchasing the Property or Spica Holdings LLC.  (Larson Decl. at ¶ 2.)  Larson also stated that she "never would have told [Defendant] that any waterfront facilities at the [Property] were 'grandfathered' in or exempt from the [SMP.  In fact, [Defendant] was informed of the exact opposite each and every time such facilities were discussed."  (Larson Decl. at ¶ 5.)  Likewise, Steve Felte, the former general manager for Plaintiff, stated he did not recall ever discussing the Property with Defendant, and he "would not have offered advise [sic] on how to avoid or circumvent the building or use of any improvements or facilities that would encroach or use Tulloch Reservoir not in compliance with the [SMP]" in meetings about other properties with Defendant.  (Doc. 50-4, Declaration of Steve Felte ("Felte Decl.") at 4.)

        Accordingly, Defendant's motion for summary judgment on the defense of laches will be

---

is not applicable here, as any potential injustice to Defendant, i.e., requiring him to obtain permits for his facilities, is minimal and thus insufficient to outweigh the public interest in the safety and use of public waters.

denied, and Plaintiff's motion for partial summary judgment on its third claim for public nuisance will be granted.

## I.      Request for Injunctive Relief

Plaintiff requests a permanent injunction to abate the nuisance caused by the Contested Facilities.  (Compl. at 12; Doc. 39 at 21.)  Specifically, Plaintiff requests that the Court enter a permanent injunction: (1) prohibiting Defendant from installing, possessing, or maintaining property within the Project Boundary without seeking prior approval and obtaining a permit from Plaintiff; (2) prohibiting Defendant from installing, possessing, or maintaining property within the Project Boundary that is not in compliance with a permit obtained from Plaintiff; (3) requiring Defendant within ten days of the permanent injunction to submit plans to Plaintiff for removal of his property that was installed without prior approval from Plaintiff; (4) providing for the abatement of the public and private nuisance that Defendant's continuing violation of the Ordinance represents; (5) enjoining Defendant from unreasonably interfering with Plaintiff's Flowage Easement; and (6) enjoining Defendant from continuing to trespass on Plaintiff's Flowage Easement.  (Compl. at 12; Doc. 39 at 21–22.)

As an initial matter, the Court observes that items (5) and (6) cannot be granted.  With regard to item (5), Plaintiff has not moved for summary judgment on its claim for interference with express easement, so no relief for that claim can be granted at this stage.  As for item (6), Plaintiff does not dispute that its trespass claim fails as a matter of law, so Plaintiff is not entitled to relief for that claim.  The Court now turns to the request for injunctive relief to abate public nuisances.

Normally, a party seeking injunctive relief in federal court must to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  However, "[a] legislatively declared public nuisance constitutes a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury."  *Virtual Media Group, Inc. v. City of San Mateo*, 2002 WL 485044, *3 (N.D. Cal. Mar. 27, 2002), *aff'd by* 66 Fed.

App'x. 129 (9th Cir. 2003).  "According to California law, all that a plaintiff alleging a nuisance per se must prove for an injunction to issue is that the property at issue was in violation of the statute or ordinance declaring the activity or condition to be a nuisance."  *Yick*, 2016 WL 4061348, at *4 (citing *City of Monterey v. Carrnshimba*, 215 Cal. App .4th 1068, 1087–88 (2013)).

In *Yick*, after determining that the defendant's unpermitted dock constituted a public nuisance per se under the Ordinance, the Court "applie[d] California substantive law regarding issuance of abatement injunctions upon proof of nuisance per se," and found that "[b]ecause [Plaintiff] has proven that [the defendant's] dock violates [the Ordinance], and there is no challenge to the constitutionality of [the Ordinance], an abatement injunction will issue."  *Yick*, 2016 WL 4061348, at *4.  Here, as in *Yick*, because the Court has determined that the Ordinance is constitutional as applied to the Contested Facilities and that those facilities violate the Ordinance, an abate injunction will issue.

The injunction to be issued, however, will not include the precise terms requested by Plaintiff.  In crafting the scope of the abatement injunction in *Yick*, the Court was "careful to minimize the hardship on [the defendant]" and observed that "[a]batement of the nuisance can be achieved by [the defendant] obtaining a permit for placement of his dock."  *Yick*, 2016 WL 4061348, at *4.  The Court issued the following injunction: "[The defendant] may maintain his dock on the Tulloch Reservoir only if [Plaintiff] approves a permit application [submitted within 21 days of the date of the order].  Otherwise, [the defendant's] dock must be removed no later than the later of (1) 15 days after the date of denial of his permit application, or (2) if no application is submitted within 21 days, 30 days after issuance of this order."  *Id.*

The Court finds that the abatement injunction in *Yick* reasonably balances the hardships between the parties and will issue a similar one here:  Within 30 days of this order, Defendant shall apply for encroachment permits from Plaintiff for each of the Contested Facilities.  Each of the Contested Facilities may be maintained on the Tulloch Reservoir only if Plaintiff approves the relevant permit application.  Otherwise, the Contested Facilities must be removed by no later than the later of: (1) 15 days after the date of denial of Defendant's permit application(s), or (2) if no application(s) are submitted within 21 days, 30 days after issuance of this order.

## V.     CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1.     Plaintiff's motion for partial summary judgment on its second and third causes of action for public nuisance and private nuisance, respectively (Doc. 38), is GRANTED IN PART and DENIED IN PART as follows:

    (a)     Plaintiff's motion for partial summary judgment on its second cause of action for public nuisance is GRANTED;

    (b)     Plaintiff's motion for partial summary judgment on its third cause of action for private nuisance is DENIED;

2.     Defendant's motion for summary judgment, or alternatively partial summary judgment or judgment on the pleadings (Doc. 45), is GRANTED IN PART and DENIED IN PART as follows:

    (a)     Defendant's motion for judgment on the pleadings on Plaintiff's first cause of action for violation of the FPA, FERC regulations, and the SMP is GRANTED;

    (b)     Defendant's motion for partial summary judgment on Plaintiff's second cause of action for public nuisance is DENIED;

    (c)     Defendant's motion for partial summary judgment on Plaintiff's third cause of action for private nuisance is DENIED;

    (d)     Defendant's motion for judgment on the pleadings on Plaintiff's fourth cause of action for trespass is GRANTED; and

    (e)     Defendant's motion for partial summary judgment on Plaintiff's fifth cause of action for interference with express easement is DENIED; and

3.     Plaintiff's request for an abatement injunction is GRANTED as follows: Within thirty (30) days of this order, Defendant shall apply for encroachment permits from Plaintiff for each of the Contested Facilities.  Each of the Contested Facilities may be maintained on the Tulloch Reservoir only if Plaintiff approves the relevant permit application.  Otherwise, the Contested Facilities must be removed by no later than

the later of: (1) 15 days after the date of denial of Defendant's permit application(s), or (2) if no application(s) are submitted within 21 days, 30 days after issuance of this order.

In light of the relief granted, it is unclear to the Court how the parties intend to proceed. **By no later than February 2, 2022**, the parties shall file either a notice of settlement, stipulation for dismissal of the action or any remaining claims, or a joint pretrial statement, should they wish to proceed with the matter. The Pre-Trial Conference, currently set for January 26, 2022, is CONTINUED to February 9, 2022, at 2:30 p.m.[10]

IT IS SO ORDERED.

Dated:   **January 18, 2022**                    /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE

---

[10] Defendant's ex parte application to reschedule the Pre-Trial Conference (Doc. 54) is **DENIED** as moot.